**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 21-884 (KSH) |
| v. | |
| CARLOS GARCIA, | **OPINION** |
| *Defendant.* | |

### I. Background

Defendant Carlos Garcia entered a guilty plea on December 1, 2021 to a two-count Information (D.E. 16) charging him with knowingly and intentionally conspiring with others to distribute and possess with intent to distribute 500 grams or more of cocaine, and with possession of a firearm and ammunition by a convicted felon. On April 27, 2022, Garcia was sentenced on the drug count to a mandatory minimum term of 60 months' imprisonment to run concurrently with a 46-month term on the gun possession count, totaling 60 months' imprisonment followed by four years of supervised release. This sentence is consistent with the recommendation of the government at the time of sentencing, that defendant serve a term of five years followed by four years of supervised release.[1]

Garcia surrendered to Bureau of Prisons ("BOP") custody on June 6, 2022, and was designated to serve his sentence at USP Lewisburg. He was projected to be released on May 13,

---

[1] A grouping analysis in the Schedule A stipulations in Garcia's plea agreement (D.E. 20) called for an adjusted offense level of 23 on the charges, resulting in a guidelines sentencing range of 46-57 months, less than the mandatory 60-month minimum sentence on the drug charge.

1

2026.[2]  (D.E. 31 at 1.)  On January 7, 2023, Garcia applied to the BOP for home confinement placement due to his risk of complications from COVID-19, listing a variety of medical conditions he suffered from.  (D.E. 31-1, Ex. A.)  On January 25, 2023, the BOP issued an "Administrative Remedy Response" signed by the Acting Warden that stated,

> [a] review of this matter by the Clinical Director revealed you are medically vulnerable due to your history of smoking.  You will be referred to this review committee for home confinement placement under the CARES Act.  Please note you will only be approved for home confinement placement if you meet the referral criteria.

(*Id.*, Ex. B.)  Ultimately, Garcia was not placed on home confinement.[3]  He claims this was because he had not yet served a sufficient portion of his sentence and because the program was terminated before his placement, which is not disputed in the government's opposition.

In July 2023, appearing *pro se*, Garcia filed this motion (D.E. 31) for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his efforts to rehabilitate himself in prison, his need to care for his mother, and his vulnerability to the COVID-19 pandemic due to his asthma, smoking history, obesity, sleep apnea, anxiety, and depression all constituted "extraordinary and compelling reasons" for early release.  The Office of the Federal Public Defender declined to enter an appearance on August 4, 2023.  (D.E. 33.)

The government opposed on grounds that Garcia did not present sufficiently "extraordinary and compelling" reasons for release and that the Section 3553(a) and Section 3142(g) sentencing

---

[2] His anticipated release date as of the date of the drafting of this opinion is February 28, 2026. *See* BOP, *Find An Inmate*, BOP Register No. 2150-509, https://www.bop.gov/inmateloc/ (last visited Oct. 17, 2023).

[3] To the extent that Garcia asks this Court to place him on home confinement, this Court lacks authority to do so, as that decision is within the sole authority of the BOP.  18 U.S.C. § 3621(b); *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021).

2

factors weighed against his release. (D.E. 37.) Garcia subsequently filed another submission (D.E. 39) entitled Memorandum in Response to the Government's Opposition, adding more detail in support of the arguments in his original papers.

**II.     Discussion**

A term of imprisonment may only be modified "under very limited circumstances." *United States v. Suarez*, 2023 WL 3052726, at *2 (D.N.J. Apr. 24, 2023) (McNulty, J.) (citing *In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009)). Relevant here is 18 U.S.C. § 3582(c)(1), which provides as follows:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
> 
> (i) extraordinary and compelling reasons warrant such a reduction;
> 
> [. . .]
> 
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Here, Garcia sought compassionate release from the warden at USP Lewisburg, and his request was denied on June 21, 2023. (D.E. 31-1, Exs. C, D.) The government does not dispute that Garcia has fully exhausted his administrative remedies. (D.E. 37 at 4.) Accordingly, the Court will consider his application on the merits.

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release where: (i) extraordinary and

compelling reasons warrant the reduction; (ii) the defendant is not a danger to the safety of others or to the community under 18 U.S.C. § 3142(g); and (iii) release would comport with the § 3553(a) factors, to the extent applicable.  U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018).  The term "extraordinary and compelling" is not defined by statute, and so the Court looks to the Sentencing Commission's policy statement for guidance.  *See Suarez*, 2023 WL 3052726, at *2.  The policy statement's application notes explain that a defendant's medical condition, age, or family circumstances may, under certain circumstances, serve as "extraordinary and compelling" reasons for compassionate release.  USSG § 1B1.13, Application Note 1(A)-(C).  The application notes also include a catchall provision stating that "other reasons" may be sufficient where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions."  *Id.*, Application Note 1(D).

### A. Garcia's Rehabilitation Efforts

Garcia asserts that compassionate release is justified for "extraordinary and compelling" reasons because he has taken great strides to rehabilitate himself while serving his prison sentence.  He alleges that he attends weekly church services, maintains prison employment, participates in continuing education and recidivism reduction courses,[4] and was admitted to and will graduate from the Residential Drug Abuse Program ("RDAP") on November 9, 2023.  In his response submission, Garcia argues that his inability to receive a sentence reduction for completing RDAP due to the nature of his crimes is another circumstance that warrants compassionate release.  He also claims he has not received any disciplinary infractions and is not a threat to the community,

---

[4] His response lists "numerous Adult Continuing Education Courses (ACE) and Evidence Based Recidivism Reduction Courses (EBBR)."  (D.E. 39 at 4.)

and in his response anchors this to his BOP Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score, which he describes as "amongst the lowest." (D.E. 39 at 4.)

However, Congress has expressly determined that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release. 28 U.S.C. § 994(t). And the Third Circuit has expressly held that an inmate's "efforts in furtherance of rehabilitation," even when "commendable," are "expected." *United States v. Bledsoe*, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022). In discussing this concept, one district court notes that "rehabilitation is one of the goals of any incarceration"[5] and thus is the type of behavior that is "precisely what is expected." *United States v. Nguyen*, 2022 WL 15524593, at *4 (E.D. Pa. Oct. 27, 2022). The programs that Garcia has taken exist so that prisoners will participate and gain tools for a successful return to society as a contributing member. His active participation in programs may support the proposition that Garcia is unlikely to reoffend, but that does not affect the propriety of the sentence he received. The Court concludes that under the sentencing factor of rehabilitation and case law construing it, Garcia's rehabilitation efforts cannot rise to an extraordinary and compelling reason for compassionate release.

### B. Garcia's Need to Care for his Mother

Garcia next argues that he is the only available caregiver for his mother, whom he describes as elderly and infirm. Under the current version of the Sentencing Commission policy statement discussed above, a defendant's family circumstances may warrant compassionate release in two scenarios: the "incapacitation of the caregiver of the defendant's minor child" or the

---

[5] *See* 18 U.S.C. § 3553(a)(2)(D) (requiring a sentencing court to consider "the need for the sentence imposed . . . to provide the defendant with the needed educational or vocational training . . . or other correctional treatment in the most effective manner").

5

"incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG § 1B1.13, Application Note 1(C).

Albeit care for a parent is not listed under that guideline as a qualifying family circumstance for compassionate release purposes at present, the government points out that the Sentencing Commission is amending its policy statement as of November 1, 2023, adding the situation where "a defendant's parent is incapacitated and the defendant would be the only available caregiver." *See* USSC, *Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, *archived at* https://perma.cc/F847-UT9R (dated Apr. 27, 2023) (effective Nov. 1, 2023).

The Court considers Garcia's showing under the amendment, and concludes that for several reasons he has not made an adequate showing to justify early release. As of March 2022, Garcia's mother was 58 years old and working as an office cleaner in Manhattan. (D.E. 23, PSR ¶ 53.) Garcia takes issue in his response with the government's reliance on the presentence investigation for information about his mother's condition, but he has not provided specific information beyond the statement that her health "has begun to deteriorate and her lack of an appropriate caregiver has caused her conditions to be exacerbated and her overall health to decline rapidly." (D.E. 39 at 4.) The attached note from his mother's doctor states that she requires "constant treatment and assistance" for her sleep apnea, pneumonitis, rhinitis, reflux gastritis, and post traumatic depression, but this information does not provide detail about how her caregivers are responding to these conditions, nor does it support releasing Garcia to be one of them. (D.E. 31-1, Ex. E.)

6

Additionally, the medical ailments of aging relatives have been the subject of numerous decisions concluding these difficult circumstances are not extraordinary for purposes of compassionate release. *See United States v. Babbs*, 2023 WL 4686323, at *5 (D.N.J. July 21, 2023) (Castner, J.) (carefully reviewing decisions that generally conclude that "[m]any if not all inmates" have parents suffering age-related illnesses, and as such these circumstances do not qualify as "extraordinary"). Furthermore, Garcia has not shown that he is his mother's only available caregiver. The Presentence Report from March 2022 indicates that Garcia has several siblings, including a sister who was living with his mother at the time. (PSR ¶ 53.) And Garcia candidly notes in his motion papers that, albeit sporadic, there is a "patchwork of caregivers helping provide care." (D.E. 31 at 2.)

Accordingly, Garcia's mother's medical condition does not rise to the level of an extraordinary and compelling reason to grant compassionate release.

### C. Garcia's Risk of Contracting COVID-19

Finally, Garcia claims he suffers from several comorbidities of COVID-19—asthma, obesity, history of smoking, obstructive sleep apnea, anxiety, and depression—that justify early release because of the danger they pose to him. In opposing, and significantly, the government points out that Garcia has refused the COVID-19 vaccine offered to him. (*See* D.E. 37-2 at 5, 38, 40, 122.) The Third Circuit has held that a prisoner's refusal to get vaccinated "belies his purported health concerns." *United States v. Estevez-Ulloa*, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022); *see also United States v. Jenkins*, 2021 WL 5833424, at *5 (D.N.J. Dec. 9, 2021) (Vazquez, J.) ("Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow.").

In his response, Garcia characterizes the government's opposition as arguing he is not at

7

increased risk of serious harm should he contract COVID-19. The Court does not read the opposition that way, and does not find Garcia's attack on the BOP for mishandling COVID-19 outbreaks nor his claim that BOP staff "frequently fails to report or even attempt to treat or contain outbreaks within its facilities" (D.E. 39 at 2) to be persuasive or supported. His challenge to how the BOP reports the number of vaccinated inmates may have surface appeal but misses the point: he has refused the vaccine and courts take that into account when a prisoner voices health concerns. That he has been advised by prison staff "not to trust the vaccine" (*id.*) is equally not the issue; he has made up his own mind not to get vaccinated. He is 41 years old, has a GED and some college education (PSR ¶ 68), and bears responsibility for that decision.

The CDC has recognized that moderate to severe asthma, along with overweight, obesity, and severe obesity, are conditions that may place a person at increased risk of serious illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, *archived at* https://perma.cc/TN6L-BA2V (last updated May 11, 2023) (last visited Oct. 17, 2023).[6] This does not, however, entitle a defendant with a listed condition, or combination of them, to compassionate release. *See United States v. Venable*, 2022 WL 4010854, at *3 (D.N.J. Sept. 1, 2022) (Hillman, J.) (reviewing cases denying compassionate release to defendants suffering from asthma); *United States v. Caro*, 2023 WL 3092049, at *2-3 (D.N.J. Apr. 26, 2023) (McNulty, J.) (denying motion for compassionate release for inmate with asthma and

---

[6] When discussing overweight and obesity, the CDC cautions that "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI." *Id.* Individuals are considered overweight if they have a BMI between 25 and 30, obese if they have a BMI between 30 and 40, and severely obese if they have a BMI higher than 40. *See id.* At the time of his original submission in July 2023, Garcia's most recent medical visit from May 2023 indicated that he had a BMI of 27. (D.E. 37-2 at 4.)

8

obesity). Rather, the policy statement clarifies that a qualifying medical condition must "substantially diminish[] the ability of the defendant to provide self-care" within his environment. USSG § 1B1.13, Application Note 1(A)(ii).

That does not appear to be the case here. Garcia's BOP records indicate that his BMI qualifies him as overweight, not obese.[7] (D.E. 37-2 at 4.) Although overweight is still a risk factor recognized by the CDC, Garcia has not made any showing that his weight diminishes his ability to care for himself. In fact, his argument that he seeks release in order to take care of his mother strongly suggests otherwise. Further, BOP records confirm that Garcia's asthma is regularly monitored and well controlled. He has been prescribed two inhalers to prevent and treat his asthma symptoms—one for daily use and one for emergency use. (*Id.* at 2-3, 7-8, 10-11, 52, 60-61, 118.) The records from his latest medical examination on August 4, 2023 indicate that Garcia has used the emergency inhaler approximately once per week, but has gone against BOP physician instructions and chosen to stop using the daily inhaler altogether. (*Id.* at 2-3.) Because of his noncompliance with his treatment plan, the BOP provider discontinued the medication order for the daily inhaler. (*Id.* at 3.) On several occasions, he has refused lab testing and vaccinations. (*Id.* at 2, 5, 7, 38, 40, 56, 64, 66, 122.) And the BOP record from his May 17, 2023 visit indicates that Garcia had "no complaints" about his health. (DE 37-2 at 4.) The Court is satisfied that Garcia's overweight and asthma do not diminish his daily activities.

Addressing Garcia's other health issues, the Court recognizes CDC guidance that a mental

---

[7] Garcia's response claims that BOP medical records contain "fabricated" information (D.E. 39 at 3), but the Court is satisfied that they are reliable. There is no evidence to suggest that the medical records contain any false information. They show that Garcia has brought his conditions to the attention of medical staff and received ongoing recognition and care for them. As such, the Court will rely on the BOP records provided to it. (*See generally* D.E. 37-2.)

health condition or a history of smoking increases the likelihood of getting "very sick" from COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, *archived at* https://perma.cc/TN6L-BA2V (last updated May 11, 2023) (last visited Oct. 17, 2023). Garcia's BOP records do not show any history of his alleged depression or anxiety. Rather, they indicate that all his mental health assessments have produced normal results. (D.E. 37-2 at 25, 32, 92, 98.) Garcia disclaimed any history of mental health problems or treatments to the BOP. (PSR ¶ 62.) While the BOP records do confirm that Garcia smoked tobacco for 25 years (D.E. 37-2 at 4, 102), his history as a heavy smoker is insufficient to justify early release, *see United States v. Pena*, 2023 WL 2263578, at *3 (D.N.J. Feb. 28, 2023) (Chesler, J.) (denying compassionate release where defendant did not show that his history of smoking placed him "at a significantly higher risk of COVID-19 complications than others in the prison"), particularly where Garcia has not shown how his mental health or his smoking history "substantially diminishes" his ability to provide self-care. USSG § 1B1.13, Application Note 1(A)(ii).

The Court also declines to grant compassionate release for Garcia's sleep apnea, as the CDC does not recognize sleep apnea as a comorbidity or increased risk factor of COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, *archived at* https://perma.cc/TN6L-BA2V (last updated May 11, 2023) (last visited Oct. 17, 2023); *Joaquin-Rodriguez*, 2022 WL 3215098, at *2 (declining compassionate release for a prisoner suffering from sleep apnea, asthma, obesity, and other health issues).

Garcia acknowledges that USP Lewisburg does not have a high infection rate, but asserts

that this can "change[] overnight." (D.E. 31 at 3.) At the time of this decision, USP Lewisburg has no confirmed cases of COVID-19 among inmates or staff. *See* BOP, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html#, *archived at* https://perma.cc/S4CP-V2B7 (last visited Oct. 17, 2023). While Garcia is correct that case numbers may fluctuate at any time, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Muskey*, 2023 WL 1462827, at *1 (3d Cir. Feb. 2, 2023) (citation omitted).

In sum, Garcia has not sufficiently demonstrated extraordinary and compelling reasons for compassionate release. As such, the Court need not consider whether early release would comport with the factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a). The Court nonetheless notes that Garcia is a repeat offender and was sentenced under a statute requiring a mandatory minimum term of 60 months' incarceration, of which he has served less than half.[8] The sentencing factors of just punishment, promoting respect for the law, deterring criminal conduct, and protecting the public all support the sentence Garcia is serving, and there is nothing in this record to suggest that his sentence is "greater than necessary" to comply with the enumerated purposes of sentencing.

---

[8] Garcia's response challenges that calculation because good time credits and a release to a halfway house may change how long he is actually incarcerated. The Court relies on the facts as known and declines to make assumptions in this regard. In any event, what matters is the appropriateness of the sentence given the serious nature of the crime: Garcia was, as the prosecutor noted at sentencing, in possession of a firearm and about a kilogram of cocaine purchased for $47,000.

### III. Conclusion

For the foregoing reasons, Garcia's application is DENIED, and an appropriate order will issue.

Dated:  October 18, 2023                           /s/ Katharine S. Hayden
                                                  Katharine S. Hayden, U.S.D.J.